|  |  |
|---|---|
| GEO GROUP, INC., | IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA |
| Plaintiff, | CASE NO. |
| vs. | |
| MATTHEW J. SWANDO, | |
| Defendant. | |

## COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES

GEO Group, Inc., pursuant to Fla. R. Civ. P. 1.610 and Fla. Stat. § 542.335, sues Defendant, Matthew J. Swando, and alleges:

1. This is an action for temporary and/or permanent injunctive relief, and damages.

2. GEO Group, Inc. ("GEO Group") is a Florida corporation with its principal place of business in Boca Raton, Florida.

3. Defendant, Matthew Swando, is an individual and a current resident of Colorado.

4. Venue and jurisdiction are proper in this Court because Swando was originally hired by GEO Group's predecessor-in-interest, BI Incorporated, in Tampa, Florida. Thereafter, while based in Colorado, Swando continued to do business in Florida on a regular and systematic basis, with and on behalf of BI Incorporated and GEO Group. Further, when GEO Group entered into a Consulting Agreement with Swando in Florida, Swando agreed to jurisdiction and venue in Florida. And, finally, the cause of action alleged herein arose directly out of Swando's Florida Consulting Agreement and unfair competition with his former Florida employer.

## Nature of the Action

5. This is an action to remedy and prevent unfair competition and breaches of express contractual duties by a highly compensated former executive of GEO Group and its subsidiary, BI Incorporated (hereinafter collectively referred to as "GEO Group").

6. GEO Group is a leading provider of contracted detention, correctional, residential reentry, transportation, electronic monitoring and youth services.

7. Defendant Swando is a former sales executive of GEO Group.

8. In 2004, Swando commenced employment with GEO Group's predecessor-in-interest, BI Incorporated.

9. GEO Group acquired BI Incorporated in 2011 (hereinafter, and except where otherwise indicated, GEO Group and BI Incorporated are collectively referred to as "GEO Group").

10. During his ten-plus years of employment, GEO Group repeatedly promoted Swando to positions of greater trust, confidence and responsibility.

11. Swando began as a Regional Manager for BI. In 2010, Swando was promoted to Vice-President of Sales. Finally, in 2014 Swando was promoted to Divisional Vice-President, the highest position within GEO Group's, BI Incorporated subsidiary.

## Swando's Access to GEO Group' Confidential and Proprietary Information

12. GEO Group develops and maintains confidential and proprietary information that contributes to its market position and success in the competitive industry of contracted detention, correctional, residential reentry, transportation, electronic monitoring and youth services. This information includes, among other things, extensive customer and supplier data, pricing information, financial solutions, marketing strategies and business forecasts.

13. GEO Group develops this confidential and proprietary information itself, purchases additional information from third-party vendors, and develops still additional market information through its relationships with brokers and customers in the industry.

14. GEO Group takes reasonable steps to ensure the secrecy of this information, including requiring employees with access to it to sign restrictive covenant agreements and using password protection for electronically stored information.

15. This information, which is not known or generally available in the industry, is extremely valuable to GEO Group's competitive position in the market, and any competitor would derive a business advantage through the unauthorized use or disclosure of this information.

16. Swando had access to and regularly used GEO Group's confidential and proprietary information in the course of his job duties.

### Swando's Access to GEO Group's Valuable Customer Relationships, Reputation and Goodwill

17. Over the course of his career at GEO Group, and because of the training, financial resources and other support and assistance provided by GEO Group, including access to GEO Group's confidential and proprietary information, Swando was successful in developing and maintaining a substantial and profitable portfolio of GEO Group's customers.

18. In addition to this direct support in developing customer relationships that Swando received from GEO Group, GEO Group generously compensated Swando for his services.

19. GEO Group and its BI Incorporated subsidiary have invested substantial resources to develop their reputation and goodwill in the industry of contracted detention, correctional,

residential reentry, transportation, electronic monitoring and youth services, and in the geographic markets they serve.

## Swando's Agreements with GEO Group

20.     In 2004, at the commencement of his employment with BI Incorporated, and as a condition of his employment, Swando entered into a comprehensive Confidentiality, Non-Solicitation and Non-Compete Agreement.

21.     In connection with his advancement in the Company, in 2013, 2014 and 2015, Swando received grants of Restricted Stock Options from GEO Group.  Each time Swando received these stock options, Swando executed a Restricted Stock Agreement incorporating additional comprehensive confidentiality, non-solicitation and non-compete restrictions on any future employment or competition with GEO Group or its subsidiaries.

22.     Finally, on October 30, 2015, Swando entered into a Consulting Agreement with GEO Group, modifying Swando's status from a full-time employee of its BI Incorporated subsidiary, to an independent contractor/consultant, but again re-iterating his comprehensive confidentiality, non-solicitation and non-compete obligations to GEO Group and its subsidiaries. A copy of Swando's Consulting Agreement is attached as Exhibit A and incorporated herein by reference.

23.     In his Consulting Agreement, Swando agreed that, for a period of two years following the termination of his agreement, he would not "... directly or indirectly, ... tender or perform any service for a competitor of Company or as part of any company in the corrections or detention industry which is the same or similar to those services which [Swando] performed for the Company, or otherwise engage in any business or other activity that is competitive with the business conducted  by the Company in any state in which it regularly conducts business."

24. In his Consulting Agreement, Swando further agreed that, for a period of two years following the termination of his agreement, he would not "solicit or assist in the solicitation, nor ... accept business from, or provide any products or services to the Company's customers with respect to any product or service provided or offered by the Company."

25. Swando also agreed to keep confidential and not to use or disclose any Confidential Information of or concerning the Company, its business and its customers, nor use such information for the benefit of any person or entity other than the Company.

### Swando's Resignation to Join Numerex

26. In June 2016, Swando announced his resignation from GEO Group.

27. At that same time, Swando unequivocally informed GEO Group that he had already reached an agreement to join its competitor, Numerex.

28. Numerex is a business which includes the business of offering offender monitoring services and products in direct competition with GEO Group.

29. In response to Swando's announcement, GEO Group immediately advised Swando that it would strictly enforce his contractual obligations to GEO Group including the prohibition on joining Numerex, a competitor of GEO Group.  By letter of June 24, 2016, undersigned counsel for GEO Group demanded that Swando provide prompt and unequivocal assurances that he would honor his restrictive covenants and otherwise adhere to his contractual obligations to GEO Group.  Swando failed to respond in any manner to GEO Group's request for assurances.

30. All conditions precedent to this action have been performed or have occurred.

## COUNT I
## **BREACH OF CONTRACT**

31. GEO Group alleges and incorporates by reference the allegations of paragraphs 1 through 30, as though fully set forth herein.

32. Swando entered into the Consulting Agreement with GEO Group.

33. Swando breached his obligations under the Consulting Agreement by agreeing to join GEO Group's competitor, Numerex, and by otherwise repudiating his obligations to GEO Group to refrain from such competition and to honor his contractual obligations to GEO Group.

34. Swando's breach and repudiation of his non-compete obligations under his Consulting Agreement creates a real and immediate threat that Swando will breach additional obligations arising under his Consulting Agreement, including the confidentiality restriction and prohibition on solicitation of customers.

35. As a direct and proximate result of Swando's breach and threatened further breaches of his Consulting Agreement, GEO Group has and will suffer irreparable harm, including but not limited to, lost investment, lost profits, damage to its customer relations, business reputation and goodwill, and the inevitable disclosure of its confidential and proprietary information.

**WHEREFORE**, GEO Group requests that the Court:

Enter a temporary and permanent injunction enjoining and restraining Swando, and anyone acting in concert with him or on his behalf, from violating his Consulting Agreement with GEO Group;

Award GEO Group costs, including reasonable attorneys' fees incurred by GEO Group in enforcing Swando's Agreement, pursuant to Fla. Stat. § 542.335; and

Award GEO Group damages and such other and further relief as the Court may deem just, equitable, and proper.

Dated this 14th day of July, 2016 			Respectfully submitted,

By: /s/ Courtney B. Wilson
Courtney B. Wilson, Esq.
Florida Bar No.614580
E-Mail:  cwilson@littler.com
LITTLER MENDELSON PC
Wells Fargo Center
333 SE 2nd Avenue
Suite 2700
Miami, FL 33131
Telephone:   305.400.7500
Facsimile:   305.675.8497

*ATTORNEYS FOR GEO GROUP, INC.*

# EXHIBIT A

## CONSULTANT AGREEMENT

This is an Agreement entered into on this 30th day of October, 2015 ("Effective Date") between Matthew J. Swando ("Consultant"), whose address is ███████ ███████ , and The GEO Group, Inc. ("GEO"), whose primary address is One Park Place, Suite 700, 621 N.W. 53rd Street, Boca Raton, Florida 33487. GEO includes GEO Care, LLC., GEO Transport, Inc., BI Incorporated and all other GEO subsidiaries, divisions and/or regions.

In consideration of the mutual promises herein contained, GEO and Consultant agree as follows:

1. **SCOPE OF SERVICES**
    Beginning November 1, 2015, and continuing during the Term of this Agreement as defined in Section 2, Consultant shall be compensated for and shall provide consulting services. Accordingly, Consultant shall provide the following services (collectively, the "Services") and shall:

    - Assist in identifying new contracted detention, correctional, residential re-entry, transportation, electronic monitoring and youth services for GEO;
    - Assist in promoting new and/or current contracted detention, correctional, residential re-entry, electronic monitoring, transportation and youth services for GEO;
    - Travel domestically and internationally in connection with assisting GEO with new and/or current contracted detention, correctional, residential re-entry, electronic monitoring, transportation and youth services for GEO;
    - Facilitate, and upon request, attend meetings between GEO and GEO staff, to discuss the design, financing, marketing, bid, proposal, negotiation, construction and/or operation of current or newly identified projects;
    - Promote the positive contributions of contracted detention, correctional, residential re-entry, community supervision, electronic monitoring, transportation and youth services by GEO;
    - Assist GEO in obtaining contract extensions and per diem increases;
    - Provide any and all other related assistance requested by GEO to assist GEO in submitting proposals for new projects, consistent with the services outlined herein.
    - Provide any and all other related assistance requested by GEO;
    - Consultant shall perform no Services for or on behalf of the Company, unless specifically requested to do so by a Divisional Vice President or above.

2. **TERM OF AGREEMENT**
    a. This Agreement shall commence November 1, 2015, and shall continue through October 31, 2016 (the "Expiration Date").

1

3. **PAYMENT RATES AND BILLING**

    Consultant shall be compensated for the Services provided in accordance with Section 1 at the rate of $10,000.00 per month. Consultant shall submit to GEO a billing statement at the end of each month.

    Consultant will travel under GEO travel policies and be reimbursed according to GEO Policy 2.1.1.A <u>Corporate Travel Policy</u> (**Exhibit B**). Consultant shall be reimbursed for all documented travel and business expenses incurred directly as a result of providing Services under this Agreement in accordance with GEO Policy 2.1.1.B <u>Expense Reimbursements</u> (**Exhibit C**). All air travel and lodging shall require the prior approval and authorization in order to qualify for reimbursement hereunder. Consultant shall not be required to travel absent such prior approval for reimbursement (not actual reimbursement) made in a reasonable time before such travel.

4. **RIGHTS AND DATA**

    Consultant agrees that all data, including drawings, designs, prints, photographs, specifications, test data tabulation, completed forms, reports, proposals, and all other information furnished by GEO to the Consultant for use in connection with the performance of this Agreement or emanating from the work called for under this Agreement (herein called "GEO Data") shall be and remain the sole property of GEO. GEO Data that qualifies as Confidential GEO Information (as defined below) provided to Consultant shall be governed by the obligations of confidentiality in Section 5, data security and privacy best practices, and restrictions against disclosure at least as restrictive as those contained in this Section and Section 5 of this Agreement. The Consultant further agrees that all GEO Data not considered Confidential GEO Information shall be kept in confidence and not disclosed to third parties, excepting that certain data, as appropriate, may be disclosed to appropriate agencies/departments in connection with the performance of this Agreement. The Consultant agrees that GEO Data shall not be used for any other purposes or disclosed to any other parties except with the prior written consent of GEO. At the termination of this Agreement, or when Consultant's performance of Services ceases, for any reason, or at any other time at Company's request, Consultant must promptly deliver to Company any and all GEO Data and Confidential GEO Information (as defined below) (including information embodied in intangible form, e.g., in computer memory) in Consultant's possession and all copies thereof, without retaining any copies, duplicates, extracts or portions thereof. Consultant understands that its obligation not to use or disclose GEO Data and GEO's Confidential Information survives termination of this Agreement.

    Consultant will, and will cause its employees and, or, agents to (i) wipe clean the device memory on all equipment and machines on which GEO Data is placed, at the time of disposal, sale or recycling, as applicable, and (ii) sanitize storage media, as well as temporary files and back up files on which GEO Data is stored, at the time Consultant's retention timeframe for archival or audit purposes expires, and shall certify such destruction to GEO in writing. Upon completion or termination of the Services to be furnished under this Agreement, Consultant shall return and, or, destroy all remaining GEO Data in accordance with Consultant's record retention and destruction policies.

2

5. **CONFIDENTIALITY**

    "Confidential GEO Information" means any GEO Data or information provided under this Agreement by GEO to the Consultant that is commercially valuable, confidential, proprietary, or a trade secret. Confidential GEO Information, however, shall not include information that is or was, at the time of the disclosure: (a) generally known or available to the public; (b) received by Consultant from a third-party; (c) already in Consultant's possession prior to the date of receipt from Discloser; or (d) independently developed by Consultant. These exceptions apply in each case as long as the information was not delivered to or obtained by Consultant as a result of any breach of this Agreement, law, or any contractual, ethical, or fiduciary obligation owed to GEO.

    Consultant agrees (i) not to disclose Confidential GEO Information to any other person, firm, or entity without first obtaining GEO's express written consent, and (ii) that at all times it shall use the same standard of care to protect Confidential GEO Information as it uses to protect its own confidential information of a similar nature, but not less than a commercially reasonable standard of care. Consultant shall hold all Confidential GEO Information and all GEO Data in trust and confidence for GEO, and shall not use any GEO Data other than for the benefit of GEO. If Consultant becomes subject to a court order for the release of Confidential GEO Information and, or, GEO Data, or is otherwise legally compelled to release any information related to GEO, Consultant shall use its best efforts to provide GEO with as much advance notice as possible of the information's prospective release, to the extent permitted by applicable Laws, to enable GEO to petition for protective concealment, or to oppose the disclosure, of the GEO Data and, or, Confidential GEO Information. Consultant further agrees that the unauthorized disclosure of Confidential GEO Information is a material breach of this Agreement that may result in irreparable harm to GEO. In those cases, payment of money damages is inadequate and difficult to ascertain. Consultant agrees, therefore, that GEO may, at its sole option, seek immediate injunctive relief in any court of competent jurisdiction enjoining any further such breach, and Consultant consents to the entry of judgment for injunctive relief.

    The terms and conditions of this Agreement shall remain confidential between the parties hereto, and neither party shall disclose to any third person such terms and conditions, except as may be required by law or request of GEO's client.

6. **STATUS AND RESPONSIBILITY OF CONSULTANT; NATURE OF RELATIONSHIP**

    Consultant shall perform the Services for GEO as an independent contractor and not as an agent or employee of GEO. It shall be the responsibility of the Consultant to perform all Services assigned hereunder in conformity and strict compliance with all applicable laws, rules and regulations of the United States and the several states, and any foreign country, including but not limited to compliance with the Foreign Corrupt Practices Act of the United States.

    During the term of this Agreement and notwithstanding anything contained herein to the contrary regarding Consultant's duties as provided under this Agreement, the parties hereto agree that this Agreement does not in any way create the relationship of joint venture,

partnership, principal and agent or employer and employee between GEO and Consultant. Unless expressly or specifically authorized in writing executed by both parties hereto, neither party shall act or attempt to act, or represent themselves, directly or by implication, as agent for the other or in any manner assume or create, or attempt assume or create, any obligation on behalf or in the name of the other party.

Consultant shall be responsible for any required state or local lobbying registration and reporting requirements – including coordinating with GEO and its other retained lobbyists for preparation and filing of lobbyist employer or principal reports.

7. **RESTRICTIVE COVENANTS**

The Company and Consultant also mutually recognize that, as a result of Consultant's services to the Company, Consultant is in a position to obtain confidential information including but not limited to current and potential customer lists, staffing and staffing cost information, computer applications, data, inventions, methods, techniques, software, databases, existing and future products and services, business plans and development strategies, and other materials that the Company has spent a great deal of time and money to develop, which are essential to the activities of the Company. The parties hereto agree that the type of services which the Consultant performed for the Company is not necessarily limited to any one geographic area and, consequently, a covenant restricting competition which is limited by geographic boundaries would be meaningless and unreasonable. Consultant, therefore, agrees that during the term of this Agreement and for a period of two (2) years after this Agreement has ended for any reason whatsoever:

(a) *Competitors.* The Consultant will not directly or indirectly, alone or as a member of a partnership, or as an officer, director, stockholder or employee of any corporation, or by or through or as a part of any other entity, tender or perform any service for a competitor of Company or as part of any company in the corrections or detention industry which is the same or similar to those services which he performed for the Company, or otherwise engage in any business or other activity that is competitive with the business conducted by the Company in any state in which it regularly conducts business.

(b) *Customers.* The Consultant will not solicit or assist in the solicitation, nor will Consultant accept business from, or provide any products or services to the Company's customers with respect to any product or service provided or offered by the Company. For purposes of this provision, "customers" means any entity to which the Company sold or made an offer to sell its products or services during the two-year period prior to the expiration of this Agreement and in which the Consultant participated or otherwise was materially involved in the sale, provision, or offer to sell such products or services.

(c) *Employees.* The Consultant will not directly or indirectly, on behalf of Consultant or another, solicit, lure or hire any employee or service personnel of Company of whom Consultant became aware while providing services to the Company or encourage or induce any such persons to terminate their relationship with Company or assist or aid another in any such activity.

(d) *Clients*. The Consultant will not directly or indirectly, alone or as a member of a partnership, or as an officer, director, stockholder or employee of any corporation, or by or through or as a part of any other entity, tender or perform any service for clients or prospective clients of the Company, including but not limited to governmental entities, with which the Consultant dealt or about which the Consultant received information at any time during the past twenty-four (24) month period immediately preceding the expiration of this Agreement.

The parties agree and acknowledge that the restrictions contained in this Section 7 are reasonable in scope and duration and are necessary to protect the Company's legitimate business interests as well as those of its subsidiaries or affiliates. If any covenant or agreement contained in this Section 7 is found by a court having jurisdiction to be unreasonable in duration, geographical scope or character of restriction, the covenant or agreement will not be rendered unenforceable thereby but rather the duration, geographical scope or character of restriction of such covenant or agreement will be reduced or modified with retroactive effect to make such covenant or agreement reasonable, and such covenant or agreement will be enforced as so modified.

The Consultant agrees and acknowledges that the breach of this Section 7 will cause irreparable injury to the Company or any of its subsidiaries or affiliates and upon the breach of any provision of this Section 7, the Company, its parent or any of its subsidiaries or affiliates shall be entitled to injunctive relief, specific performance or other equitable relief, without being required to post a bond; *provided, however*, that, this shall in no way limit any other remedies which the Company or any of its subsidiaries or affiliates may have (including, without limitation, the right to seek monetary damages).

8. **TERMINATION**
Either party may terminate this Agreement by giving the other party written notice of intent to terminate, which such termination shall become effective upon receipt of such notice. In the event of Consultant's death or a termination by the Company prior to the "Expiration Date" for any reason or no reason, Company shall continue to compensate Consultant or his heirs as provided for in this Agreement, and the Confidential Separation Agreement and General Release through the Expiration Date or the Term.

9. **ENTIRE AGREEMENT**
This Agreement, along with the Separation Agreement and General Release entered into by the parties on October 30, 2015, which shall remain in full force and effect following the Effective Date of this Agreement, represents the entire agreement between the parties hereto with respect to the transactions contemplated herein, supersedes all prior agreements and may not be modified or amended except by the mutual written agreement of the parties.

10. **CONSTRUCTION**
This Agreement shall be construed and enforced in accordance with the laws of the State of Florida, without regard to conflicts of law principles. The parties agree that the exclusive

5

jurisdiction and venue for any action arising under this Agreement shall be Palm Beach County, Florida.

## 11. REPRESENTATION

Consultant represents that the relationship, Services, and compensation set forth in this Agreement are lawful and in strict accordance with all applicable laws and regulations, and acknowledges that GEO has relied upon Consultant's representation to such effect in entering into this Agreement. In the event any part or all of the terms and conditions of this Agreement are deemed to be contrary to such applicable laws or regulations of the identified jurisdiction, the parties hereto agree that such part or all of this Agreement shall be deemed null and void, and no services or compensation shall be due with respect to same.

## 12. SURVIVAL OF RESTRICTIONS

The restrictions contained in this Agreement are independent of any other contractual obligations in this Agreement or otherwise owed by Company to Consultant. The existence of any claim or cause of action by Consultant against Company, whether based on this Agreement or otherwise created, shall not create a defense to the enforcement by Company or its affiliates of any restrictions contained herein. The restrictions contained in this Agreement shall survive the termination of this Agreement.

## 13. ATTORNEYS' FEES AND COSTS

If at any time after the execution of this Agreement, either party should institute legal action to enforce any of the terms and conditions of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and the costs of litigation, including those incurred in investigation, bond, bankruptcy and appellate proceedings. The remedies available to Company in the event Consultant breaches any of the provisions of this Agreement are cumulative, and Company's exercise of any remedy will not limit any other remedies that may be available to Company at law or in equity. Company also will be entitled to any and all remedies available under applicable law, including damages and exemplary damages.

## 14. ASSIGNMENT

Neither party hereto may assign its rights, duties and obligations hereunder without written consent to the other party, which consent shall not be unreasonably withheld.

## 15. SEVERABILITY

The parties hereto agree that if any provision in this Agreement is held to be invalid, illegal, or unenforceable, either legislatively or judicially, such provision will be modified so as to be enforceable, or shall be severed here from, and the remainder of this Agreement will continue to be valid and enforceable.

## 16. WAIVER OF JURY TRIAL

Consultant and Company knowingly, voluntarily and intentionally waive the right to a jury trial in any lawsuit between Consultant and Company that arises at any time out of this Agreement, whether at law or in equity, whether based on a claim or counterclaim, arising

before or after the Effective Date of this Agreement, regardless of the nature of the claim or counterclaim, and including claims under tort, contract, statutory or common law.

### 17. COUNTERPARTS/ELECTRONIC TRANMISSION

This Agreement may be executed in two (2) or more counterparts, each of which shall be considered one and the same instrument. An executed counterpart of this Agreement that is delivered by facsimile or other electronic means will have the same force and effect as an original.

**IN WITNESS WHEREOF**, the undersigned authorized parties affix their signatures effective the date first written above.

**CONSULTANT:**

_____     _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_____
Matthew J. Swando                              SS# or Fed. Tax ID#

**THE GEO GROUP, INC.:**

_____
George C. Zoley
Chairman, CEO and Founder

IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

CASE NO.

GEO GROUP, INC.,

    Plaintiff,

vs.

MATTHEW J. SWANDO,

    Defendant.

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State, and any other officer authorized to serve process in the state where the below-named Defendant is served:

    YOU ARE COMMANDED to serve this summons and a copy of the complaint or petition in this action on Defendant,

Matthew J. Swando
1730 West 129th Drive
Westminster, CO 80234

    Each defendant is hereby required to serve written defenses to the complaint or petition on Courtney B. Wilson, Esquire, plaintiff's attorney, whose address is **Littler Mendelson, P.C., Wells Fargo Center, 333 SE 2nd Ave., Suite 2700, Miami, FL, 33131**, within 20 days after service of this summons on that defendant, exclusive of the day of service, and to file the original of the defenses with the clerk of this court, located at:

Palm Beach County Courthouse
205 North Dixie Highway
West Palm Beach, FL 33401

either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that cross-defendant for the relief demanded in the complaint or petition.

DATED on      Jul 15 2016     , 2016.

As Clerk of the Court

By: _Belva Hamilton_
As Deputy Clerk
Belva Hamilton

FOR PERSONAL SERVICE ON A NATURAL PERSON

IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached Complaint in this Court. A phone call will not protect you; your written response, including the above case number and named parties, must be filed if you want the Court to hear your case. If you do not file your response on time, you may lose the case, and your wages, money, and property may thereafter be taken without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).

If you choose to file a written response yourself at the same time you file your written response to the Court, you must also mail or take a carbon copy or photocopy of your written response to the "Plaintiff/Plaintiff's Attorney" named below

IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la llamada telefonica no lo protegera; si usted desea que el tribunal incluyendo el numero del caso y las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo eviso del tribunal. Existen otros requistitos legales. Si lo desea, puede abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante)

IMPORTANT

Des poursuites judiciaries ont eta entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrita a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de le telphone est insuffisant pour vous proteger; vous etes oblige de deposer votre reponse ecrite, evec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que
le Tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la uite, sans aucun preavis ulterieur du Tribunal. Il y a d'autres obligations juidiques et vour pouvez requerir les services immediats d'un avocat. Si your ne connaissez pas d'avocat, yous pourriez telephoner a un service de reference d'avocoats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il yous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocipie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) namme ci-dessous.

Firmwide:141432603.1 059218.1256

2

Filing # 43954450 E-Filed 07/14/2016 02:52:51 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

### I.  CASE STYLE

IN THE CIRCUIT COURT OF THE <u>FIFTEENTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>PALM BEACH</u> COUNTY, FLORIDA

Case No.:_____
Judge: _____

GEO GROUP, INC.
Plaintiff
vs.
MATTHEW J SWANDO
Defendant

### II.  TYPE OF CASE

- ☐ Condominium
- ☐ Contracts and indebtedness
- ☐ Eminent domain
- ☐ Auto negligence
- ☐ Negligence – other
    - ☐ Business governance
    - ☐ Business torts
    - ☐ Environmental/Toxic tort
    - ☐ Third party indemnification
    - ☐ Construction defect
    - ☐ Mass tort
    - ☐ Negligent security
    - ☐ Nursing home negligence
    - ☐ Premises liability – commercial
    - ☐ Premises liability – residential
- ☐ Products liability
- ☐ Real Property/Mortgage foreclosure
    - ☐ Commercial foreclosure $0 - $50,000
    - ☐ Commercial foreclosure $50,001 - $249,999
    - ☐ Commercial foreclosure $250,000 or more
    - ☐ Homestead residential foreclosure $0 – 50,000
    - ☐ Homestead residential foreclosure $50,001 - $249,999
    - ☐ Homestead residential foreclosure $250,000 or more
    - ☐ Non-homestead residential foreclosure $0 - $50,000
    - ☐ Non-homestead residential foreclosure $50,001 - $249,999
    - ☐ Non-homestead residential foreclosure $250,00 or more
- ☐ Other real property actions $0 - $50,000
- ☐ Other real property actions $50,001 - $249,999
- ☐ Other real property actions $250,000 or more

- ☐ Professional malpractice
    - ☐ Malpractice – business
    - ☐ Malpractice – medical
    - ☐ Malpractice – other professional
- ☒ Other
    - ☒ Antitrust/Trade Regulation
    - ☐ Business Transaction
    - ☐ Circuit Civil - Not Applicable
    - ☐ Constitutional challenge-statute or ordinance
    - ☐ Constitutional challenge-proposed amendment
    - ☐ Corporate Trusts
    - ☐ Discrimination-employment or other
    - ☐ Insurance claims
    - ☐ Intellectual property
    - ☐ Libel/Slander
    - ☐ Shareholder derivative action
    - ☐ Securities litigation
    - ☐ Trade secrets
    - ☐ Trust litigation

## COMPLEX BUSINESS COURT

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☒ No ☐

III. **REMEDIES SOUGHT** (check all that apply):
- ☒ Monetary;
- ☒ Non-monetary
- ☒ Non-monetary declaratory or injunctive relief;
- ☐ Punitive

IV. **NUMBER OF CAUSES OF ACTION: (   )**
(Specify)

1

V. **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☐ Yes
- ☒ No

VI. **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☒ No
- ☐ Yes – If "yes" list all related cases by name, case number and court:

VII. **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☐ Yes
- ☒ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature s/ Courtney B Wilson     FL Bar No.: 614580
    Attorney or party                                                          (Bar number, if attorney)

Courtney B Wilson     07/14/2016
    (Type or print name)                                                    Date