UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH

CASE NO. 9:16-cv-81530-DMM

GEO GROUP, INC.,

    Plaintiff,

v.

MATTHEW J. SWANDO,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff, GEO Group, Inc., pursuant to Fed. R. Civ. P. 65 and S.D. Fla. L.R. 7.1(E), moves for a preliminary injunction against Defendant, Matthew J. Swando, to enforce the restrictive covenants contained in the Consultant Agreement between GEO Group and Swando. The grounds for this motion are set forth below pursuant to S.D. Fla. L.R. 7.1(C).

**MEMORANDUM OF LAW**

**I.    INTRODUCTION**

In this action, Plaintiff GEO Group seeks to enforce the restrictive covenants contained in the Consultant Agreement against a former executive, Defendant, Matthew J. Swando. Swando is a former senior executive of GEO Group and its BI Incorporate ("BI") subsidiary, who has commenced employment with Numerex, a direct competitor of GEO Group. In this position, in direct contravention of his Consultant Agreement, Swando will be in a position to use his intimate knowledge of GEO Group's existing and developing technology to unfairly compete with GEO Group. In addition, Swando will necessarily market Numerex products and services to the very same customers and in the same industry where he served as the face of GEO Group.

Such conduct violates the unequivocal terms of Swando's Consultant Agreement, wherein he agreed: (i) not to accept employment with any competitor of GEO Group for a period of two years; (ii) not to use or disclose any of GEO Group's confidential or proprietary information; and (ii) not to seek, solicit, divert, or accept any business from GEO Group customers or clients, in competition with GEO Group.

Accordingly, GEO Group requests that this Court preliminarily enjoin Swando from (a) working for Numerex in any capacity; (b) otherwise using or disclosing any of GEO Group's confidential or proprietary information; or (c) soliciting, diverting, or accepting any business from any GEO Group customers or clients, in competition with GEO Group.

## II.  FACTUAL BACKGROUND

Founded in 1984, Plaintiff GEO Group is a world leader in providing correction, detention, and community reentry services. In 2004, Swando commenced employment with GEO Group's predecessor-in-interest, BI Incorporated. In 2010, BI promoted Swando to Vice President of Sales. GEO Group acquired BI Incorporated in 2011 (hereinafter, and except where otherwise indicated, GEO Group and BI Incorporated are collectively referred to as "GEO Group"). In 2014, Swando was promoted to Divisional Vice President, the highest position within BI.

As the Divisional Vice President, Swando was responsible for BI's: (i) profits and losses; (ii) customer and employee relationships; and (iii) business operations, including its plans for future products and market entries. BI is a technology and services company that has contracts with county, state, and federal correctional institutions to monitor individuals who are on probation, parole, work release, or serving deferred judgments. BI focuses on the research, development, and sale of monitoring technology and services that enhances correctional

agencies' abilities to monitor supervised individuals. BI is a leading provider of technology to community corrections and immigration partners across the United States. As the highest ranking officer of BI, a position Swando held until late 2015, Swando had knowledge of all of BI's business operations, all of its technology, and all of its future plans, including product development that is currently underway but which has not yet been released to the market, and including plans to enter into new markets for which it has no competitors.

In 2015, Swando ceased his employment with BI and entered into a Consultant Agreement directly with GEO Group. As a consultant, Swando reported directly to certain senior executives at GEO Group and received directions from BI's Divisional Vice President. Swando was responsible for: (1) assisting in identifying new contracted detention, correctional, residential re-entry, transportation, electronic monitoring and youth services for GEO Group and BI; (2) assisting in promoting new and/or current contracted detention, correctional, residential re-entry, electronic monitoring, transportation and youth services for GEO Group and BI; (3) travelling domestically and internationally in connection with assisting GEO Group and BI with new and/or current contracted detention, correctional, residential re-entry, electronic monitoring, transportation and youth services for GEO Group and BI; (4) facilitating, and upon request, attending meetings between GEO Group and GEO Group staff (including its subsidiary, BI), to discuss the design, financing, marketing, bid, proposal, negotiation, construction and/or operation of current or newly identified projects; (5) promoting the positive contributions of contracted detention, correctional, residential re-entry, community supervision, electronic monitoring, transportation and youth services by GEO Group and BI; (6) assisting GEO Group and BI in obtaining contract extensions and per diem increases; and (7) providing any and all

other related assistance requested by GEO Group and BI, including assisting in submitting proposals for new projects.

### Swando's Access to GEO Group' Confidential and Proprietary Information

GEO Group's unique product features and services, including but not limited to the Intensive Supervised Appearance Program ("ISAP") program described below, lead to GEO Group's success in the marketplace.  To remain competitive in their market, GEO Group engages in extensive research and development regarding enhanced or new products and services as well as potential market entry points for its existing products and services.  GEO Group' competitive advantage derives from its confidential research and development of its products and services.  To protect this investment, GEO Group maintains strict confidentiality agreements with its employees and consultants, and uses password enabled devices to secure their research and development of product features and services.

By way of example only, one such product is GEO Group's "Intensive Supervised Appearance Program" ("ISAP").  BI has contracted with the United States of America's Immigrations and Customs Enforcement ("ICE") Department, for the administration of the ISAP program.  The ISAP program was developed by BI for the purpose of tracking individuals who are unlawfully in the U.S. and who are being evaluated for extradition or for approval to remain in the U.S. for such things as asylum protection.  ISAP was first implemented in 2004 and BI is the only entity to administer ISAP to date.  BI now monitors approximately 60,000 illegal entrants into the U.S. through 65 offices. The ISAP contract currently generates approximately $90 million per year in revenue for BI. None of BI's competitors know the business plans underlying its administration of ISAP or how BI has organized the business to operate ISAP profitably.

Swando, as the highest executive officer in BI, was entrusted with knowing all aspects of ISAP and improving upon its business design and operations. By way of example, Swando has knowledge regarding (i) the technology associated with implementing ISAP; (ii) the case-management model upon which ISAP is structured; (iii) the appropriate staffing levels based upon BI's internal efficiency reviews; (iv) the model used for pricing the ISAP contract; and (v) BI's profitability targets related to ISAP. Further, Swando was involved in private conversations with ICE agents concerning aspects of contract performance which are not public but which relate to goals ICE seeks to achieve through ISAP. These conversations allow BI to structure its services to anticipate and meet ICE's future needs and demands. This business operations knowledge was not accumulated, and has never been accumulated, in a single-written document, but instead has been developed over many years at great expense to GEO Group. Since 2004, BI has invested in excess of $5 million in developing and implementing ISAP. No individual outside of GEO Group has access to this business operations knowledge.

BI does not now have, nor has it ever had, competitors for its ISAP program, and none of BI's competitors know the business plans underlying the creation of the program or how BI has organized the business to operate the program profitably. Therefore, a typical competitor would have to start from scratch to set up a competing business. However, Swando knows exactly how the business is organized, how it has been improved over the years through trial, error, analysis, and revision. Therefore, Swando has an advantage in competing with BI that is not based on industry knowledge and experience generally but, instead, is based on BI's ten-plus years of trial and error experience in organizing and running the business profitably. It would take BI's competitors years to acquire and duplicate the confidential information BI has developed on its implementation of ISAP. And this is only one example of the type of confidential and

proprietary knowledge Swando can use to unfairly compete with GEO Group if he is allowed to continue to violate his Consultant Agreement.

### Swando's Access to GEO Group's Valuable Customer Relationships, Reputation and Goodwill

GEO Group and its BI Incorporated subsidiary have also invested substantial resources to develop their reputation and goodwill in the industry of contracted detention, correctional, residential reentry, transportation, electronic monitoring and youth services, in the geographic markets they serve. With respect to the products and services offered by BI, Swando regularly represented BI in the industry it serves. For example, GEO Group and BI employees attend various industry events such as the American Correctional Association, and American Probation and Parole Association ("APPA") annual conferences directed to those engaged in the community corrections marketplace. Swando would represent GEO Group and BI at these industry conferences. And in addition to this direct support that Swando received from GEO Group in developing customer relationships and goodwill in the industry, GEO Group generously compensated Swando for his services.

### Swando's Agreements with GEO Group

In 2004, at the commencement of his employment with BI, and as a condition of his employment, Swando entered into a comprehensive Confidentiality, Non-Solicitation and Non-Compete Agreement. In connection with his advancement in the Company, in 2013, 2014 and 2015, Swando received grants of Restricted Stock Options from GEO Group. Each time Swando received these stock options, Swando executed a Restricted Stock Agreement incorporating additional comprehensive confidentiality, non-solicitation and non-compete restrictions on any future employment or competition with GEO Group or its subsidiaries. Finally, on October 30, 2015, Swando entered into a Consultant Agreement with GEO Group, modifying Swando's

status from a full-time employee of its BI Incorporated subsidiary, to an independent contractor/consultant, but again re-iterating his comprehensive confidentiality, non-solicitation and non-compete obligations to GEO Group and its subsidiaries.

The 2015 Consultant Agreement contains comprehensive confidentiality, non-solicitation, and non-compete obligations to GEO Group and its subsidiaries. A copy of the 2015 Consultant Agreement is attached as Exhibit 1 and incorporated by reference. In his Consultant Agreement, Swando agreed to the following restrictive covenants:

> 7. **RESTRICTIVE COVENANTS**
>
> The Company and Consultant also mutually recognize that, as a result of Consultant's services to the Company, Consultant is in a position to obtain confidential information including but not limited to current and potential customer lists, staffing and staffing cost information, computer applications, data, inventions, methods, techniques, software, databases, existing and future products and services, business plans and development strategies, and other materials that the Company has spent a great deal of time and money to develop, which are essential to the activities of the Company. The parties hereto agree that the type of services which the Consultant performed for the Company is not necessarily limited to any one geographic area and, consequently, a covenant restrict competition which is limited by geographic boundaries would be meaningless and unreasonable. Consultant, therefore, agrees that during the term of this Agreement and for a period of two (2) years after this Agreement has ended for any reason whatsoever:
>
> (a)   *Competitors*. The Consultant will not directly or indirectly, alone or as a member of a partnership, or as an officer, director, stockholder or employee of any corporation, or by or through or as a part of any other entity, tender or perform any service for a competitor of Company or as party of any company in the corrections or detention industry which is the same or similar to those services which he performed for the Company, or otherwise engage in any business or other activity that is competitive with the business conducted by the Company in any state in which it regularly conducts business.
>
> (b)   *Customers*.  The Consultant will not solicit or assist in the solicitation, nor will Consultant accept business from, or provide any products or services to the Company's customers with respect to any product or service provided or offered by the Company.  For purposes of

this provision, "customers" means any entity to which the Company sold or made an offer to sell its products or services during the two-year period prior to the expiration of this Agreement and in which the Consultant participated or otherwise was materially involved in the sale, provision, or offer to sell such products or services.

(c)     *Employees*.   The Consultant will not directly or indirectly, on behalf of Consultant or another, solicit, lure or hire any employee or service personnel of Company of whom Consultant became aware while providing services to the Company or encourage or induce any such persons to terminate their relationship with Company or assist or aid another in any such activity.

(d)     *Clients*.   The Consultant will not directly or indirectly, alone or as a member of a partnership, or as an officer, director, stockholder or employee of any corporation or by or through or as a part of any other entity, tender or perform any service for clients or prospective clients of the Company, including but not limited to governmental entities, with which the Consultant dealt or about which the Consultant received information any any time during the past twenty-four (24) month period immediately preceding the expiration of this Agreement.

The parties agree and acknowledge that the restrictions contained in this Section 7 are reasonable in scope and duration and are necessary to protect the Company's legitimate business interests as well as those of its subsidiaries or affiliates.  If any covenant or agreement contained in this Section 7 is found by a court having jurisdiction to be unreasonable in duration, geographical scope or character of restriction, the covenant or agreement will not be rendered unenforceable thereby but rather the duration, geographical scope or character of restriction of such covenant or agreement will be reduced or modified with retroactive effect to make such covenant or agreement reasonable, and such covenant or agreement will be enforced as so modified.

The Consultant agrees and acknowledges that the breach of this Section 7 will cause irreparable injury to the Company or any of its subsidiaries or affiliates and upon the breach of any provision of this Section 7, the Company, its parent or any of its subsidiaries or affiliates shall be entitled to injunctive relief, specific performance or other equitable relief, without being required to post a bond; *provided*, *however*, that, this shall in no way limit any other remedies which the Company or any of its subsidiaries or affiliates may have (including, without limitation, the right to seek monetary damages).

(*See* Exhibit 1, 2015 Consultant Agreement at pp. 2-5 (emphasis in original).)

**Swando's Resignation to Join Numerex**

In June 2016, Swando announced his resignation from GEO Group to join GEO Group's competitor—Numerex. Numerex is a business which includes the business of offering offender monitoring services and products in direct competition with GEO Group. Swando falsely informed GEO Group that if he were to accept employment with Numerex, he would be involved in "personal tracking," e.g., tracking of pets, individuals with Alzheimer's disease, and lost children. Upon information and belief, Numerex does not even offer any such services.

In response to Swando's announcement, GEO Group immediately advised Swando that it would strictly enforce his contractual obligations to GEO Group including the prohibition on joining Numerex, a competitor of GEO Group. By letter of June 24, 2016, undersigned counsel for GEO Group demanded that Swando provide prompt and unequivocal assurances that he would honor his restrictive covenants and otherwise adhere to his contractual obligations to GEO Group. Swando failed to provide the requested assurances and, instead, through his counsel repudiated his contractual obligations to refrain from competing with GEO Group.

In August 2016, GEO Group and BI employees attended an American Probation and Parole Association ("APPA") conference in Cleveland, Ohio. This conference is directed to those engaged in the community corrections marketplace, such as GEO Group and BI. GEO Group and BI employees observed Swando working at a Numerex booth at the APPA conference, the same conference where he had previously represented GEO Group and BI. At the APPA conference, Numerex and Swando were promoting products and services in direct competition with GEO Group and BI, and which did not relate to the tracking of pets, individuals with Alzheimer's disease, and lost children.

### III. ARGUMENT

#### A. Standard for a Preliminary Injunction.

GEO Group seeks a preliminary injunction to prevent further irreparable harm from Swando's repudiation and continuing breach of the restrictive covenants of his Consultant Agreement. Issuing a preliminary injunction lies within the sound discretion of the district court. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Under federal law, codified in Rule 65, to obtain a preliminary injunction GEO Group must establish four elements: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Id.*; *TransUnion Risk & Alternative Data Sols., Inc. v. MacLachlan*, 625 F. App'x 403, 405 (11th Cir. 2015) citing *Siegel v. LePore,* 234 F.3d 1163, 1176 (11th Cir.2000) (en banc) (per curiam)(same): *Pitney Bowes Inc. v. Acevedo*, No. 08-21808-CIV, 2008 WL 2940667, at *2 (S.D. Fla. July 28, 2008).

#### B. GEO Group Has Satisfied the Standard for Injunctive Relief.

As evidenced below, GEO Group has satisfied each of these requirements. Accordingly, this Court should issue a preliminary injunction against Swando.

##### 1. GEO Group Is Likely to Prevail on the Merits.

When a federal court sits in diversity jurisdiction, as this Court does, the court applies state law to the substantive issues of the case. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). Florida law governing restrictive covenants, such as those in Swando's Consultant Agreement, is set out in Florida Statutes § 542.335, which provides in pertinent part:

> **542.335  Valid restraints of trade or commerce.—**

(1) . . . [E]nforcement of contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business, is not prohibited.  In any action concerning the enforcement of a restrictive covenant:

(a) A court shall not enforce a restrictive covenant unless it is set forth in a writing signed by the person against whom enforcement is sought.

(b) The person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.  The term "legitimate business interest" includes, but is not limited to:

1. Trade secrets, as defined in s. 688.002(4).

2. Valuable confidential business or professional information that does not otherwise qualify as trade secrets.

3. Substantial relationships with specific prospective or existing customers . . . or clients.

4. Customer . . . or client goodwill associated with:

   a. An ongoing business or professional practice, by way of trade name, trademark, service mark, or "trade dress";

   b. A specific geographic location; or

   c. A specific marketing or trade area.

. . . .

(c) A person seeking enforcement of a restrictive covenant also shall plead and prove that the contractually specified restraint is reasonably necessary to protect the legitimate business interest or interests justifying the restriction. If a person seeking enforcement of the restrictive covenant establishes prima facie that the restraint is reasonably necessary, the person opposing enforcement has the burden of establishing that the contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests.  If a contractually specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the legitimate business interest

>or interests, a court shall modify the restraint and grant only the
>relief reasonably necessary to protect such interest or interests

FLA. STAT. § 542.335(1) (1996).

Thus, pursuant to § 542.335(1)(c), GEO Group must only present a *prima facie* case by showing that the restraint is reasonably necessary to protect the legitimate business interests justifying the restriction. Thereafter, the restrictive covenants must be enforced unless Swando carries **his burden** of proving that the contractual restraint is "overbroad, overlong, or otherwise not reasonably necessary to protect the established legitimate business interest or interests." See generally, *Pitney Bowes Inc. v. Acevedo*, 2008 WL 2940667, at *3.

### A. GEO Group's Restrictive Covenants Protect Legitimate Business Interests

Under Florida law, a restrictive covenant must protect a legitimate business interest, such as trade secrets; valuable confidential business information; relationships with specific prospective or existing customers; customer goodwill; or specialized training. However, a plaintiff need only establish <u>one</u> legitimate business interest to justify the non-compete covenant. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1233 (11th Cir. 2009); *AutoNation v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla. 2004) (citing Fla. Stat. ¶ 542.335(1)(b)).

Here, GEO Group seeks to protect its legitimate business interest in its confidential and proprietary business information, as well as its customer relationships and goodwill. If Swando is allowed to compete with GEO Group, developing and marketing Numerex products and services to the same markets that GEO Group develops and markets its products, Swando will be able to capitalize on GEO Group's customer relationships, goodwill, and the confidential and proprietary information to which he had access at GEO Group. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d at 1234 (affirming the District Court's conclusion that "when an employee has

access to confidential business information crucial to the success of an employer's business, that employer has a strong interest in enforcing a covenant not to compete.")

Indeed, Florida courts have issued injunctive relief in cases with similar legitimate business interests and restrictions as those at issue in this case. In *AutoNation v. O'Brien*, the court enforced a non-competition agreement against a former manager of used vehicle operations who had access to confidential and proprietary business information during his employment and went on to work for a direct competitor. 347 F. Supp. 2d at 1305. Specifically, defendant, who left plaintiff to work for a direct competitor, had access during his employment to compilations of business strategies and techniques as well as confidential business sales and market analysis information. *Id.* at 1305-06. The court found such information to constitute a legitimate business interest justifying enforcement of defendants' non-competition agreement. *Id.* at 1307. Further, the court held that any competitor who gained access to such information would have an unfair competitive advantage. *Id.*

Similarly, here Swando had access to extensive and high level proprietary and confidential information developed by GEO Group regarding its unique products and services and its extensive experience marketing and implementing those programs.  If Swando is allowed to use this information for Numerex's benefit, Numerex would certainly gain an unfair competitive advantage over GEO Group.  This is particularly true given Swando's uniquely high level position at GEO Group and BI.  "Generally, the higher the responsibilities of the employee against whom enforcement of the restrictive covenants is sought, the more likely is the finding of legitimate business interest."  *United Subcontractors, Inc. v. Godwin*, No. 11-81329-CIV, 2012 WL 1593173, at *6 (S.D. Fla. Feb. 3, 2012), *report and recommendation adopted,* No. 11-81329-CV, 2012 WL 8652471 (S.D. Fla. Mar. 9, 2012) *citing AutoNation, Inc. v. O'Brien,* 347

F.Supp.2d 1299 (S.D.Fla.2004); see also, *Pitney Bowes Inc. v. Acevedo*, 2008 WL 2940667, at *3 (relying on defendant's "high position in Pitney Bowes' sales department"). And Swando's attendance at industry conferences, on behalf of GEO Group, demonstrate an additional legitimate business interest in the customer relationships and goodwill thereby generated at these industry events. *Reliance Wholesale, Inc. v. Godfrey*, 51 So. 3d 561, 565 (Fla. 3d DCA 2010) (attendance at industry trade shows on behalf of employer established a distinct legitimate business interest supporting enforcement of non-compete).

### B. Geo Group's Restrictive Covenants AreReasonable.

In determining the validity of a restrictive covenant, Florida courts look at whether the covenant is reasonable as to time and geographic area. The restrictions here are also entirely reasonable and enforceable under Florida law. Indeed, similar restrictions in time and geography are routinely upheld by Florida courts. *See O'Brien*, 347 F. Supp. 2d at 1307 (upholding year long non-competition agreement without a geographic limitation); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F. Supp. 2d 1346, 1351-52 (M.D. Fla. 2002) (upholding one-year non-solicitation agreement of any clients defendant became aware of through working for plaintiff); *Milner*, 377 F. Supp. 2d at 1217-18, 1221 (upholding a one-year non-competition covenant and two-year non-solicitation covenant where it was limited in geography to the area in which the employee had conducted such activities and where plaintiff could show substantial relationships with the customers).

Further, GEO Group seeks only a *preliminary* injunction to preserve the status quo until trial. That trial is currently set for April 2017. See ECF 6. Thus, because Fla. Stat. § 542.335(1)(d) provides that restrictive covenants restraining a former employee's post-termination conduct for a period of ***six months*** or less are presumptively reasonable, there can be

no serious challenge to the duration of a *preliminary* injunction in effect merely to preserve the status quo until trial.

### C. Swando Has Breached his Consultant Agreement.

Swando has clearly breached the restrictive covenants of his Consultant Agreement by accepting employment with a direct competitor of GEO Group. "Working for a competitor constitutes material breach of a non-competition agreement." *United Subcontractors, Inc. v. Godwin*, 2012 WL 1593173, at *11, citing *Pitney Bowes Inc. v. Acevedo*. Further, Swando's attendance at the very same trade shows he previously attended on behalf of GEO Group, is a direct breach of his agreement to refrain from such unfair competition. *Reliance Wholesale, Inc. v. Godfrey*, 51 So. 3d at 565. GEO Group, therefore, is likely to prevail on the merits.

### 2. GEO Group Will Suffer Irreparable Harm in the Absence of Injunctive Relief.

Irreparable harm or injury is "the *sine qua non* of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Where, as here, Florida substantive law applies "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." *Proudfoot Consulting Co. v. Gordon*, 576 F.3d at 1231, citing Fla. Stat. ¶ 542.335(1)(j); *TransUnion Risk & Alternative Data Sols., Inc. v. MacLachlan*, 625 F. App'x at 404 (Florida's statutory presumption of irreparable harm, applies in federal court's Rule 65 analysis); *see also Autonation v. O'Brien*, 347 F. Supp. 2d at 1307("... a party seeking an injunction to enforce a restrictive covenant does not need to prove that the defendant's specific activities will cause irreparable injury if not enjoined. Rather, once a violation is established, the burden is on the party opposing the injunction to rebut the presumption of irreparable harm."); *Pitney Bowes Inc. v. Acevedo*, 2008 WL 2940667, at *5.

### 3.    GEO Group Will Suffer Greater Injury Than Swando if This Court Does Not Grant the Requested Injunction.

Courts within this Circuit generally find that the balance between protecting the employer's confidential information or goodwill, and the former employee's being limited under a non-competition agreement from working for a competitor, is weighted in favor of protecting the confidential information and goodwill as contemplated by the agreement between the parties. *See, e.g., Dunn*, 191 F. Supp. 2d at 1354 (finding relative harm to defendants slight since they had entered into non-solicitation and non-competition agreements); *Urologix, Inc. v. Wood*, Civ. A. No. 8:08-669, 2008 WL 2790230, at *9 (M.D. Fla. Jul. 18, 2008) (potential loss of customers outweighed restrictions imposed on former employee by the non-competition agreement); *North American Products Corp. v. Moore*, 196 F. Supp. 2d 1217, 1231 (M.D. Fla. 2002) (potential loss of customers due to former salesman's competitive activities outweighed the restrictions within his employment agreement); *see also BellSouth Telecommunications, Inc.*, 425 F.3d at 970 (finding that plaintiff's loss of customers and goodwill outweighed defendant's self-inflicted loss of customers).

Here, GEO Group's confidential information, goodwill and established customer relationships came at a great price. GEO Group invested considerable time, money, and manpower, to establish this information, which enabled Swando to be successful and earn substantial compensation for over ten years. The risk of GEO Group losing the value of its investment outweighs the cost of Swando complying with the terms of the Agreement he willingly entered into in exchange for those lucrative employment opportunities. *See O'Brien*, 347 F. Supp. 2d at 1308 (finding that balance of harm weighed in favor of injunction where plaintiff employer's "confidential business information was developed and collected over an extended period of time and at considerable expense to [plaintiff].").

Further, the provision of an injunction bond will adequately protect Swando against the burden of complying with his restrictive covenants and a preliminary injunction, whereas GEO Group has no such protection from the threatened irreparable harm. *Ameripath, Inc. v. Wetherington*, No. 10-60766-CIV, 2010 WL 3470914, at *5 (S.D. Fla. Sept. 3, 2010) (finding that though employee would have to give up his competitive employment, he was adequately protected from any undue burden by the posting of a bond covering his loss of income).

### 4.     The Public Interest Favors Injunctive Relief

In Florida, the public has a cognizable interest in the protection and enforcement of contractual rights. *See Johnson Controls, Inc. v. Rumore,* 2008 WL 203575, * 14 (M.D. Fla. Jan.23, 2008); *C.H. Robinson Worlwide, Inc. v. B & G Produce, Inc.,* 2007 WL 41946, *3 (M.D. Fla. January 4, 2007). This interest is particularly strong with respect to non-compete agreements, as the Florida Legislature has determined that the enforcement of such agreements is in the public's interest. *Pitney Bowes Inc. v. Acevedo*, 2008 WL 2940667, at *6, *citing Autonation,* 347 F.Supp.2d at 1308.

> As evidenced by the Legislature's enactment of Section 542.335 of the Florida Statutes, public policy in Florida favors enforcement of reasonable covenants not to compete. In the instant case, the Court finds that enforcement of O'Brien's Non–Compete Agreement will further the public interest by assisting AutoNation in protecting its investment in confidential and proprietary business information that it uses to become a more profitable and efficient business enterprise. Additionally, the Florida Legislature has determined that in order to refuse enforcement of an otherwise enforceable restrictive covenant based on public policy considerations, the specified public policy must substantially outweigh the need to protect the legitimate business interest or interests established by the person seeking enforcement of the restraint. Fla. Stat. § 542.335(1)(I).

*Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d at 1308.

Particularly in a situation, such as this, where GEO Group has provided Swando with unique access to substantial confidential and proprietary information, it is in the public's interest for the employer to be able to protect this information through contracts with its employees. *See, e.g., Urologix*, 2008 WL 2790230, at *10 ("It is well-established that claims regarding covenants not to compete, confidentiality agreements, and trade secrets are allowed, despite their anti-competitive nature, because companies . . . need them to survive.") (*citing Unisource Worldwide, Inc. v. South Central Alabama*, 199 F. Supp. 2d 1194, 1215 (M.D. Ala. 2001).  Only with this protection are employers incented to invest time, manpower, and money in the furtherance of their business. Accordingly, the public interest favors the issuance of injunctive relief.

### IV.  CONCLUSION

For the foregoing reasons, GEO Group respectfully requests that this Court grant its Motion for a Preliminary Injunction and enter a preliminary injunction enjoining and restraining Swando, from continuing to violate his Consultant Agreement with GEO Group.

DATED:  this 14th day of September, 2016         Respectfully submitted,

/s/ *Courtney B. Wilson*
Courtney B. Wilson, Esq.
Florida Bar No. 0614580
E-Mail:  cwilson@littler.com
Secondary:  kljackson@littler.com
Littler Mendelson, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile:  (305) 603-2552

COUNSEL FOR PLAINTIFF,
GEO GROUP, INC.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of September, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se identified on the attached Service List in the matter specified either via transmission of notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or Parties who are not authorized to receive electronically Notices of Electronic Filing.

BY: /s/ *Courtney B. Wilson*
Courtney B. Wilson, Esq.

## **SERVICE LIST**

*COUNSEL FOR PLAINTIFF*

Courtney B. Wilson, Esq.
Florida Bar No. 0614580
E-mail: cwilson@littler.com
Secondary: kljackson@littler.com
Littler Mendelson, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile: (305) 603-2552

*COUNSEL FOR DEFENDANT*

Jonathan Edgar Pollard, Esq.
Florida Bar No. 83613
E-mail: jpollard@pollardllc.com
Pollard PLLC
401 E. Las Olas Blvd., #1400
Fort Lauderdale, FL 33301
Telephone: (954) 332-2380
Facsimile: (866) 594-5731