UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:16-cv-81530-MIDDLEBROOKS

GEO GROUP, INC.,

      Plaintiff,

v.

MATTHEW J. SWANDO,

      Defendant.

_____/

## ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION

THIS CAUSE comes before the Court on Plaintiff's Motion for Preliminary Injunction, filed September 14, 2016. (DE 9). On September 22, 2016, Defendant Matthew J. Swando filed a Response (DE 14), to which Plaintiff replied on September 26, 2016 (DE 20). On October 13, 2016, Defendant filed a Motion for Leave to File Surreply (DE 27), Supplemental Declaration by Defendant (DE 28), and Motion to Take Judicial Notice (DE 29). On October 14, 2016, I held an evidentiary hearing. Having considered the record, including the testimony and documents presented at the hearing, I find that a preliminary injunction is warranted.

## BACKGROUND

Plaintiff GEO Group, Inc. ("GEO") is a Florida corporation with its principal place of business in Florida. (DE 1, Compl. at ¶ 2). GEO is a provider of contracted detention, correctional, residential reentry, transportation, electronic monitoring, and youth services. (*Id.* at ¶ 6).

Defendant Matthew J. Swando is a citizen of Colorado. (*Id.* at ¶ 3). In 2004, Mr. Swando began working at BI Incorporated ("BI"). In 2011, GEO acquired BI, and BI became a subsidiary of GEO. (*Id.* at ¶ 8). While at BI, Mr. Swando was a regional manager, a vice-

president of sales, and then divisional vice-president, which is the highest position at BI. (*Id.* at ¶ 11). At BI, Mr. Swando worked on its ankle monitoring products and services, which are mostly sold to governmental entities. Mr. Swando remained employed at BI until October 2015, when he then entered into a Consultant Agreement with GEO, which included a confidentiality and non-compete agreement. (*Id.* at ¶ 22). As part of his Consultant Agreement, Mr. Swando became an independent contractor. (*Id.*). He was a GEO consultant until June 2016. (*Id.* at ¶ 26).

GEO alleges Mr. Swando had access to and regularly used GEO's confidential and proprietary information in the course of his job duties. (*Id.* at ¶ 16). GEO describes this confidential and proprietary information as "extensive customer and supplier data, pricing information, financial solution, marketing strategies and business forecasts." (*Id.* at ¶ 12). GEO alleges that it develops some of this information and that it purchases some of the information from third-party vendors. (*Id.* at ¶ 13). GEO also alleges that Mr. Swando had access to GEO's customers, as he helped develop and maintain these customers. (*Id.* at ¶ 17).

In June 2016, less than one year after he signed the Consultant Agreement, Mr. Swando informed GEO that he had reached an agreement to join Numerex, which GEO alleges is a competitor. (*Id.* at ¶ 27). Numerex offers offender monitoring services and products in direct competition with GEO.

GEO's one-count Complaint alleges that Mr. Swando breached his obligations under the Consultant Agreement. Specifically, GEO contends Mr. Swando breached the Agreement by joining a competitor, Numerex. (*Id.* at ¶ 33). GEO also contends that there is "a real and immediate threat that Swando will breach additional obligations arising under his Consultant

Agreement, including the confidentiality restriction and prohibition on solicitation of customers."
(*Id.* at ¶ 34).

On July 14, 2016, GEO filed the Complaint in state court, and Mr. Swando removed the case to federal court on August 31, 2016. (DE 1). GEO filed the instant Motion for Preliminary Injunction on September 14, 2016. (DE 9). The Motion is fully briefed and the Parties have been afforded an opportunity to present evidence and argument at a hearing.

At the hearing, GEO presented the testimony of Jock Waldo, Divisional Vice President of BI. Mr. Waldo was employed at BI during Mr. Swando's tenure. Mr. Swando presented his own testimony, as well as the testimony of a Numerex engineer, Yoganand Rajala. I found all of the witnesses to be credible and forthcoming. Mr. Swando also introduced two documents into evidence: (1) a contract between the State of Colorado and BI, and (2) FCC documents concerning a BI/GEO device.

## STANDARD

Issuing a preliminary injunction lies within the sound discretion of the district court. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005). Under Federal Rule of Civil Procedure 65, a court may grant a preliminary injunction when the moving party demonstrates: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). A preliminary injunction is an extraordinary and drastic remedy that should not be issued unless the moving party clearly demonstrates each of the four requirements. *Id.*

## DISCUSSION

3

In its Motion for Preliminary Injunction, GEO contends that "Swando will be in a position to use his intimate knowledge of GEO Group's existing and developing technology to unfairly compete with GEO Group.  In addition, Swando will necessarily market Numerex products and services to the very same customers and in the same industry where he served as the face of GEO Group." (DE 9 at 1).  This conduct, GEO continues, violates the terms of the Consultant Agreement, wherein Mr. Swando agreed:  (1) not to accept employment with any competitor of GEO for a period of two years; (2) not to use or disclose any of GEO Group's confidential or proprietary information; and (3) not to seek, solicit, divert, or accept any business from GEO Group customers or clients, in competition with GEO Group.  (*Id.* at 2).  GEO asks the Court to "preliminarily enjoin Swando from (a) working for Numerex in any capacity; (b) otherwise using or disclosing any of GEO Group's confidential or proprietary information; or (c) soliciting, diverting, or accepting any business from any GEO Group customers or clients, in competition with GEO Group." (*Id.*).

## 1.  Likelihood of Success on the Merits

As a court sitting in diversity jurisdiction, I must apply the law of the state in which I sit, which is Florida.  To prevail on a breach of contract claim, a party must show (1) a valid contract; (2) a material breach; and (3) damages. *Murciano v. Garcia*, 958 So. 2d 423, 423 (Fla. 3d DCA 2007); *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008).  GEO alleges that Mr. Swando has breached a restrictive employment covenant.  Florida law on the enforceability of restrictive employment covenants is found in Florida Statutes § 542.335.  The party seeking enforcement of an employment restriction must establish a prima facie case that the restriction (1) "is reasonable in time, area, and line of business" and (2) "is reasonably necessary to protect the legitimate business interest or interests in justifying the restriction."

4

Fla. Stat. § 542.335(1) and (1)(b)-(c).  *See also Proudfoot Consulting Co. v. Gordon*, 576 F.3d

1223, 1231 (11th Cir. 2009); *Autonation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla.

2004).   If the party seeking enforcement "establishes prima facie that the restraint is reasonably

necessary, the person opposing enforcement has the burden of establishing that the contractually

specified restraint is overbroad, overlong, or otherwise not reasonably necessary to protect the

established legitimate business interest or interests." *Id.*

 **Restrictive Covenant.**  As an initial matter, the Parties do not dispute the existence of a

contract, which is the Consultant Agreement and the restrictive covenant contained therein, but

instead dispute whether the restrictive covenant is enforceable.

 The restrictive covenant in the Consultant Agreement is as follows:

### 7. RESTRICTIVE COVENANTS

The Company and Consultant also mutually recognize that, as a result of
Consultant's services to the Company, Consultant is in a position to obtain
confidential information including but not limited to current and potential
customer lists, staffing and staffing cost information, computer applications, data,
inventions, methods, techniques, software, databases, existing and future products
and services, business plans and development strategies, and other materials that
the Company has spent a great deal of time and money to develop, which are
essential to the activities of the Company. The parties hereto agree that the type of
services which the Consultant performed for the Company is not necessarily
limited to any one geographic area and, consequently, a covenant restrict
competition which is limited by geographic boundaries would be meaningless and
unreasonable. Consultant, therefore, agrees that during the term of this Agreement
and for a period of two (2) years after this Agreement has ended for any reason
whatsoever:

(a) *Competitors*. The Consultant will not directly or indirectly, alone or as a
member of a partnership, or as an officer, director, stockholder or employee of
any corporation, or by or through or as a part of any other entity, tender or
perform any service for a competitor of Company or as part of any company in
the corrections or detention industry which is the same or similar to those services
which he performed for the Company, or otherwise engage in any business or
other activity that is competitive with the business conducted by the Company in
any state in which it regularly conducts business.

(b) *Customers*. The Consultant will not solicit or assist in the solicitation, nor will Consultant accept business from, or provide any products or services to the Company's customers with respect to any product or service provided or offered by the Company. For purposes of this provision, "customers" means any entity to which the Company sold or made an offer to sell its products or services during the two-year period prior to the expiration of this Agreement and in which the Consultant participated or otherwise was materially involved in the sale, provision, or offer to sell such products or services.

(c) *Employees*. The Consultant will not directly or indirectly, on behalf of Consultant or another, solicit, lure or hire any employee or service personnel of Company of whom Consultant became aware while providing services to the Company or encourage or induce any such persons to terminate their relationship with Company or assist or aid another in any such activity.

(d) *Clients*. The Consultant will not directly or indirectly, alone or as a member of a partnership, or as an officer, director, stockholder or employee of any corporation or by or through or as a part of any other entity, tender or perform any service for clients or prospective clients of the Company, including but not limited to governmental entities, with which the Consultant dealt or about which the Consultant received information any time during the past twenty-four (24) month period immediately preceding the expiration of this Agreement.

The parties agree and acknowledge that the restrictions contained in this Section 7 are reasonable in scope and duration and are necessary to protect the Company's legitimate business interests as well as those of its subsidiaries or affiliates. If any covenant or agreement contained in this Section 7 is found by a court having jurisdiction to be unreasonable in duration, geographical scope or character of restriction, the covenant or agreement will not be rendered unenforceable thereby but rather the duration, geographical scope or character of restriction of such covenant or agreement will be reduced or modified with retroactive effect to make such covenant or agreement reasonable, and such covenant or agreement will be enforced as so modified.

The Consultant agrees and acknowledges that the breach of this Section 7 will cause irreparable injury to the Company or any of its subsidiaries or affiliates and upon the breach of any provision of this Section 7, the Company, its parent or any of its subsidiaries or affiliates shall be entitled to injunctive relief, specific performance or other equitable relief, without being required to post a bond; *provided, however*, that, this shall in no way limit any other remedies which the Company or any of its subsidiaries or affiliates may have (including, without limitation, the right to seek monetary damages).

(DE 1-3 at 12-13, "Consultant Agreement" at 4-5) (emphasis in original).

**Enforceability of Restrictive Covenant.**  As explained above, GEO must first establish

6

a prima facie case that the restriction is reasonable in time, area, and line of business.  Mr. Swando does not argue that the restriction is unreasonable in these respects and confirmed at the hearing that he is not challenging the reasonableness of the restriction at this stage.

According to the terms of the Agreement, Mr. Swando is prohibited from working for any of GEO's competitors for two years after the termination of the Agreement.  The work prohibition applies to "any state in which [GEO] regularly conducts business."  "In the case of a restrictive covenant sought to be enforced against a former employee . . . or independent contractor . . . a court shall presume reasonable in time any restraint 6 months or less in duration and shall presume unreasonable in time any more than 2 years in duration."  § 542.335(d).  Mr. Waldo testified that, as a high-level executive with BI, Mr. Swando was privy to confidential information, and that with this information, a competitor could gain an unfair advantage.  He also testified that the market in which BI and GEO operates changes and agreed that after some time (without specifying a time period), Mr. Swando's knowledge of confidential information would be less valuable to a competitor.  In light of § 542.335(d), Mr. Swando's position with BI, and the fact that Mr. Swando does not challenge the reasonableness of the length of the restriction, I find that the two-year prohibition from working for a competitor is reasonable for purposes of a preliminary injunction.[1]

---

[1]  In his Supplemental Affidavit, Mr. Swando avers that he has not performed any work for GEO as a consultant since October 2015.  Jock Waldo, current Divisional Vice-President of BI, confirmed during his testimony that Mr. Swando has not performed work for GEO since sometime in 2015.  Indeed, during the evidentiary hearing, GEO's counsel conceded that Mr. Swando was not privy to confidential information while he was a consultant.  Although there may be an issue as to when the restriction begins, at the preliminary injunction stage, the Court will assume that the restriction began in October 2015.  Additionally, my finding that GEO will likely succeed in proving that the restriction is reasonable in time does not necessarily indicate that I will ultimately uphold the length of the restriction.  The result of this preliminary injunction will be to restrict Mr. Swando's employment for six and a half months, until a trial on the merits, which is scheduled for May 1, 2017.  And, giving Mr. Swando credit for the time

The restriction applies to all states in which GEO regularly conducts business. Without any argument or evidence that the geographic restriction is unreasonable, I find that GEO has made a prima facie showing that a restriction to employment with competitors operating "in any state in which [GEO] regularly conducts business" is reasonable.

I also find that part of the restriction on working for a competitor is reasonable in terms of line of business. The restriction prohibits Mr. Swando from "perform[ing] any service for a competitor of Company or as part of any company in the corrections or detention industry which is the same or similar to those services which he performed for the Company." That restriction appears to be tailored to Mr. Swando's work at BI and recognizes the reality of the confidential information possessed by Mr. Swando and the risk to GEO if he were to perform the same or similar services for a competitor. The remaining language – "or otherwise engage in any business or other activity that is competitive with the business conducted by the Company" – appears to be overbroad, as it does not differentiate between all of GEO's lines of business. I will thus enforce the first half of the line of business restriction.

The employment restriction is also substantially likely to be found reasonably necessary to protect a legitimate business interest. "Legitimate business interest" includes "trade secrets," "valuable confidential or professional information that otherwise does not qualify as trade secrets," "substantial relationships with specific prospective or existing customers . . . or clients," "customer . . . or client goodwill associated with . . . a specific . . . trade area," and "extraordinary or specialized training." Fla. Stat. § 542.335(b)(1)-(5). It is undisputed that Mr. Swando held the highest position for GEO's subsidiary, BI, before he became a consultant for GEO. GEO presented evidence that Mr. Swando had access to pricing and cost information,

---

between October 2015 and June 2016, Mr. Swando would appear to be restricted from working for a competitor for approximately 14 months by the time of trial.

product development, and bidding strategy, as well as business strategies and techniques, and market analysis information, specifically as to BI's ankle monitoring products and services. Mr. Waldo testified that Mr. Swando attended monthly meetings with governmental clients where he learned how the ankle monitoring products and services were working, and how the clients' needs may be changing due to budgetary restraints. He testified that Mr. Swando was aware of new products BI was developing, as well as new or amended services to support those products. Mr. Swando was also privy to the bidding process, including how BI and GEO developed the bid price, which is based on a number of factors. Mr. Swando did not testify to the contrary.

Mr. Swando only opposes the restrictive covenant on the grounds that GEO cannot show it has a legitimate business interest to protect. Mr. Swando relies primarily on his argument that all of the information cited by GEO can be found in GEO's bids to public agencies, which can be accessed through a Freedom of Information Act ("FOIA") request. The Colorado *contract* introduced into evidence by Mr. Swando does not indicate that GEO reveals all of its confidential information or business strategy in its bids for government contracts. Indeed, in the contract, the costs of its products and services are not delineated, only the costs to the government. Even assuming for purpose of this Motion that information disclosed to a government agency in the bidding process is not confidential, GEO seeks to protect other information that is not contained in bids. GEO presented evidence that Mr. Swando was present at internal product development and strategy meetings, and that Mr. Swando is familiar with GEO's bidding and pricing strategies.[2] This information is confidential and is not readily

---

[2] Mr. Swando also introduced a report he obtained from the FCC, which is presumably the Federal Communications Commission. The report contains photographs of the component parts of a BI/GEO device. Mr. Swando argued that all of the information to develop a competitive device could be ascertained from reports like these obtained from federal agencies. The fact that an engineer may be able to develop a competing product from analyzing such documents does

available to the public via a FOIA request. *See, e.g., Autonation*, 347 F. Supp. 2d at 1305-08 (employer's strategic plan, market analyses, forecasts, and sales trends were legitimate business interests). Accordingly, I find that GEO has clearly demonstrated a likelihood of success on the merits of proving the enforceability of its restrictive covenant.

**Breach.** The Parties do not dispute that Numerex competes with BI in the ankle monitoring business line. Mr. Swando testified that in 2016, he began working for Numerex in Colorado as the Vice-President of Sales for personal tracking products and services. He testified that he manages the sales forces for Focal Point and MyShield. Focal Point is Numerex's line of ankle monitoring products and services. Mr. Swando acknowledged that Focal Point competes with GEO's ankle monitoring products and services. MyShield is Numerex's personal monitoring products and services, which Mr. Swando testified was developed by Verizon.

Mr. Swando also presented a contract between BI and the State of Colorado, which shows that GEO regularly conducts business in Colorado. Mr. Waldo confirmed that GEO regularly conducts business in Colorado.

GEO has demonstrated a likelihood of success of proving that Mr. Swando breached the restrictive covenant by working for Numerex by managing the sales of its Focal Point line before the two-year employment restriction had expired. Through his own testimony, Mr. Swando conceded that he works for Numerex on a competing product line, Focal Point. And using October 2015 as the date of termination of the Consultant Agreement, Mr. Swando has not waited two years before securing employment with a competitor. Accordingly, GEO has clearly

---

not negate the fact that GEO creates confidential and proprietary information in the development of its products. Additionally, this argument ignores confidential information that GEO creates and maintains during the product *development* stage, before such reports are provided to the FCC.

shown a likelihood of success on the merits of its restrictive covenant based on Mr. Swando's work on the Focal Point line at Numerex.

I do not find, however, that GEO has clearly shown it will likely succeed in proving a breach of the restrictive covenant based on Mr. Swando's management of sales of the MyShield line. All of the testimony confirmed that Numerex does not compete with GEO through its MyShield line. Mr. Swando also explained that he manages two separate sales forces for MyShield and Focal Point. Accordingly, I find Mr. Swando's employment duties with respect to MyShield do not violate the restrictive covenant prohibiting working with a competitor. For this reason, I will craft a narrowly tailored preliminary injunction to allow Mr. Swando to continue his job duties with MyShield.

## 2. Irreparable Injury

"A showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (internal quotations omitted)). "[T]he loss of customers and goodwill is an 'irreparable' injury." *Ferrero v. Associated Material, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (citation omitted). Having established a substantial likelihood of success on the merits of its claim for breach of a restrictive employment covenant, GEO is entitled to a presumption of irreparable harm under Fla. Stat. § 542.335(1)(j). *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1331 (11th Cir. 2009); *Transunion Risk and Alternative Data Solutions, Inc. v. MacLaughlan*, 625 F. App'x 403, 406 (11th Cir. 2015). This presumption of irreparable harm is rebuttable. *Id.* (citing *JonJuan Salon, Inc. v. Acosta*, 922 So. 2d 1081, 1084 (Fla. 4th DCA 2006)).

Mr. Swando presented no evidence or argument to rebut the presumption of irreparable harm. On the other hand, GEO presented evidence through the testimony of Mr. Waldo of the

11

type of information that Mr. Swando has in his possession based on his role with BI.  Mr. Swando did not take any confidential information with him, such a financial data, product development information, or customer lists, but instead possesses extension knowledge of BI's ankle monitoring products and services through his former position with the company.  Mr. Swando's knowledge of BI and GEO's sales and product development plans, and pricing and cost information can allow a competitor like Numerex to obtain an unfair competitive advantage that can harm BI and GEO in bidding on future government contracts and in developing new products and services.

In light of the presumption of irreparable harm in Fla. Stat. § 542.335(1)(j), and the lack of evidence to rebut that presumption, I find that GEO has demonstrated it will suffer irreparable harm without a tailored preliminary injunction.

### 3.  Balance of Injuries

There are two competing injuries here – GEO's injury to its business if Mr. Swando is not enjoined and Mr. Swando's job loss or modification if Mr. Swando is enjoined.  Both injuries are substantial.  If I do not issue the preliminary injunction, Numerex could unfairly compete with GEO in the ankle monitoring sector.  If I issue the preliminary injunction GEO has asked me to enter, Mr. Swando cannot work for Numerex and will be forced to find another job.  After weighing the injuries to both sides, I find that the injury to GEO outweighs the risk of harm to Mr. Swando, especially in light of the tailored preliminary injunction.

### 4.  Public Interest

An injunction prohibiting a former employee from using a trade secret or confidential information furthers the public interest of protecting legitimate business interest.  *See East v. Aqua Gaming, Inc.*, 805 So. 2d 932, 934 (Fla. 2d DCA 2001); *All Leisure Holidays, Ltd. v.*

*Novello*, No. 12-62328, 2012 WL 5932364 at *6 (S.D. Fla. Nov. 27, 2012).  Accordingly, I find that the entry of preliminary injunction serves the public interest in this case.

**5.  Bond**

Federal Rules of Civil Procedure Rule 65(c) provides that prior to the issuance of a preliminary injunction, the movant must give "security in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained."  The amount of the security is within the discretion of the district court. *See BellSouth Telecomm. Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005).  Given the scope of the preliminary injunction issued, GEO shall post a **$50,000** bond.  In determining this bond, I have considered Mr. Swando's total compensation between now and the trail date, which is estimated to be $135,000.  In light of the fact that the preliminary injunction does not enjoin Mr. Swando from working at Numerex, but only enjoins him from working on Focal Point or any other ankle monitoring products or services, I find that $50,000 is a sufficient bond.  However, if Mr. Swando loses his job or if his compensation is reduced as a result of this injunction, Mr. Swando may file a motion to increase the bond at that time.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that

(1) Plaintiff's Motion for Preliminary Injunction (DE 9) is **GRANTED IN PART.**

(2) Defendant's Motion for Leave to File Surreply (DE 27) is **GRANTED.**  The proposed surreply (DE 27-1) is deemed filed.

(3) Defendant's Motion to Take Judicial Notice (DE 29) is **DENIED**.

(4) Defendant shall be immediately **ENJOINED** and restrained, until further Order of this Court, from doing any of the following:

13

a. Working for Numerex, or any other competitor of BI or GEO, in any capacity on Focal Point, or any other ankle monitoring product or service.

b. Using or disclosing any trade secrets or valuable confidential or professional information obtained from Defendant's employment with BI or GEO, including BI and GEO's sales activities, bidding and pricing strategies, product development, and market research. Defendant shall abide by the Confidentiality provisions in the Consultant Agreement, which are contained in ¶ 5 of the Agreement.

c. Defendant is **NOT ENJOINED** from working for Numerex in its MyShield line, so long as Defendant manages a sales force that does not sell Focal Point or any other ankle monitoring product or service.

(5) Plaintiff shall post bond in the amount of **$50,000**. If Plaintiff does not post the bond within 48 hours of issuance of this preliminary injunction, the preliminary injunction will automatically dissolve.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 17 day of October, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT COURT

Copies to:  Counsel of Record